**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | | |
|---|---|---|---|
| **JAMES DARNELL FORD,** | ) | **Civil Action No. 7:13-cv-00482** | |
|     **Petitioner,** | ) | | |
| | ) | | |
| **v.** | ) | | |
| | ) | | |
| **DIRECTOR, VA. DEPT. OF CORR.,** | ) | **By:** | **Hon. Robert S. Ballou** |
|     **Respondent.** | ) | | **United States Magistrate Judge** |

<u>**REPORT AND RECOMMENDATION**</u>

James Darnell Ford, a Virginia inmate proceeding <u>pro se</u>, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, and respondent filed a motion to dismiss the petition. On September 9, 2014, the Honorable Glen E. Conrad, Chief United States District Judge of this court, referred this matter to me for a report setting forth appropriate findings of fact, conclusions of law, and a recommended disposition of all of Ford's claims, pursuant to 28 U.S.C. § 636(b)(1)(B). After carefully reviewing the petition, motion to dismiss, and state court record, I recommend that the court grant the motion to dismiss and dismiss the petition.

**I.**

Ford challenges the validity of his confinement pursuant to the 2010 judgment of the Circuit Court of Rockbridge County after a jury convicted him of three counts of aggravated sexual battery and two counts of object sexual penetration.[1] After the Circuit Court of Rockbridge County imposed the jury's sentence of 45 years' incarceration, Ford unsuccessfully appealed to the Court of Appeals of Virginia and the Supreme Court of Virginia with new counsel. Ford then filed a <u>pro se</u> petition for a writ of habeas corpus with the Circuit Court of Rockbridge County, which

---

[1] Pursuant to trial counsel's motion, the trial judge dismissed four counts of indecent liberties with a minor before submitting the case to the jury. The jury acquitted Ford of two counts of aggravated sexual battery, two counts of object sexual penetration, and one count of indecent liberties with a minor.

denied the petition after considering its merits, and the Supreme Court of Virginia refused Ford's

pro se appeal.

Ford alleges the following claims in the instant federal petition:

1. The trial court erred by denying Ford's motion for a new trial based on after-discovered evidence;
2. The trial court erred by finding there was sufficient evidence to convict Ford of the crimes charged;
3. The trial court erred by allowing evidence that Ford, as an adult, slept in the same bed with his mother;
4. Trial counsel was ineffective by not preparing for trial and not preparing to cross examine Commonwealth witness Officer Mitchell Harrison;
5. Trial counsel was ineffective by not striking Rodney Watts, with whom Ford had worked for several summers, from the venire;
6. Trial counsel was ineffective by not obtaining transcripts from Ford's previous trial in Buena Vista, Virginia,[2] to fully cross-examine witnesses;
7. The prosecution allowed Officer Miles Kelly to "tamper" with defense witness Cleveland Southers;
8. Trial counsel was ineffective by not withdrawing as counsel and testifying when Cleveland Southers recanted his affidavit;
9. The trial court erred by not admitting tapes from the Rockbridge Regional Jail to corroborate Cleveland Southers' affidavit;
10. Trial counsel was ineffective by not subpoenaing witnesses who would have presented the case "in a more favorable light";
11. Trial counsel was ineffective by not asking that the trial be continued to the next day because the trial did not end until almost midnight;
12. Trial counsel was ineffective by not obtaining Ford's work history to establish Ford worked during the times of the crimes;
13. Trial counsel was ineffective by not obtaining a timeline of events and presenting it to the jury;
14. The trial in the Circuit Court of Rockbridge County violated double jeopardy because Ford had already been tried in Buena Vista, Virginia, with the same judge and witnesses but different prosecutor; and
15. Appellate counsel was ineffective by not obtaining all of the trial counsel's files to prepare the appeal.

Respondent filed a motion to dismiss, and Ford responded, making the matter ripe for disposition.[3]

After reviewing the record, I find that claims 1 and 3 do not qualify for federal habeas relief, Ford

---

[2] Ford was charged in Buena Vista with similar offenses involving the same victim, and the trial in Buena Vista ended with acquittals of all charges.

procedurally defaulted claims 7, 9, and 14, and the state court's adjudication of the ineffective assistance of counsel claims was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. Accordingly, I recommend that respondent's motion to dismiss be granted.

## II.

Ford alleges in claim 1 that the trial court erred by denying a motion for new trial based on Cleveland Southers' affidavit.[4] The Circuit Court of Rockbridge County denied the motion for new trial because Southers' affidavit was not material, would not have changed the outcome of trial, and was not admissible at trial. Ford alleges in claim 3 that the trial court erred by admitting evidence that Ford, as an adult, slept in the same bed with his mother to establish the mother's bias in favor of Ford.[5]

A federal court may grant habeas relief from a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United

---

[3] Ford notes in his response that he seeks to "incorporate[] by reference his reply to [the] [C]ommonwealth's motion to dismiss in support of this [federal] reply, as well as any reasonable inferences from the entire record in support of this reply and federal habeas petition." Ostensibly, Ford seeks to remedy any oversight on his part in this federal action by "incorporating by reference" everything filed in the state action. While Rule 10(c), Fed. R. Civ. P., allows incorporation by reference for a pleading, Ford's response to the motion to dismiss is not a pleading. See Fed. R. Civ. P. 7(a) (identifying pleadings); see also R. 12, Rules Gov. § 2254 Cases (applying the Federal Rules of Civil Procedure to habeas petitions to the extent they are not inconsistent with a habeas corpus statute or rule). Consequently, I consider Ford's response without incorporating the entire state court record. See Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 623-24 (10th Cir. 1998) (holding that allowing litigants to adopt lower court filings would "unnecessarily complicate the task" of reviewing those proceedings).

[4] Cleveland Southers was incarcerated with Ford during the trial, and after hearing about Ford's case, signed an affidavit alleging that the victim expressed regret for telling police things that were not true and about the criminal proceedings against Ford. Southers explained that he knew the victim from their workplace and had "hung out" with her and other co-workers while drinking alcohol.

In support of Ford's post-trial motion for new trial, Southers testified that the victim never said she had lied to the police but instead said that she said things to the therapist that she wished she had not said. Southers explained that he did not write the affidavit but merely signed it after it was read to him. He also testified that Officer Kelly talked to him after he signed the affidavit but before the hearing about how Southers could be charged with contributing to the delinquency of a minor for drinking alcohol in the victim presence.

[5] Ford and his mother denied this allegation, but the victim's mother testified in rebuttal that she had seen Ford in the same bed as his mother one time.

3

States." 28 U.S.C. § 2254(a).  Claims 1 and 3 do not present a violation of federal law because the admissibility of evidence in the guilt-phase of a state trial is a matter of state law and procedure. See, e.g., Hutchins v. Garrison, 724 F.2d 1425, 1437 (4th Cir. 1983).  Accordingly, I recommend that claims 1 and 3 be dismissed.[6]

## III.

A petitioner procedurally defaults a federal habeas claim when "a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule." Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006).  A state court's finding of procedural default is entitled to a presumption of correctness, provided two foundational requirements are met.  28 U.S.C. § 2254(d); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988).  First, the state court must explicitly rely on the procedural ground to deny petitioner relief.  Ylst v. Nunnemaker, 501 U.S. 797, 802-03 (1991); Harris v. Reed, 489 U.S. 255, 259-61 (1989).  Second, the state procedural rule used to default petitioner's claim must be an independent and adequate state ground for denying relief.  Ford v. Georgia, 498 U.S. 411, 423-24 (1991); Harris, 489 U.S. at 260.

The Circuit Court of Rockbridge County declined to consider claims 7, 9, and 14 pursuant to Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974).[7]  See Ylst, 501 U.S. at 803 (holding that a federal court can rely on a reasoned state court judgment resting primarily on

---

[6] Even if the claims had a basis for federal habeas relief, the state court's disposition of the claims was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.  See, e.g., 28 U.S.C. § 2254(d).  Claim 1 was disposed of in state court because the trial court's decision to discount the affidavit was not an abuse of discretion.  Claim 3 was disposed of in state court because the trial court did not abuse its discretion to allow the testimony as evidence of the mother's bias and because the issue was not preserved for appeal in violation of Rule 5A:18 of the Rules of the Supreme Court of Virginia. Regardless, Ford cannot establish prejudice for the testimony about whether Ford and his mother slept in the same bed together because the alleged fact was not relevant to the elements of the charged crimes.

[7] Slayton precludes a state court from reviewing a non-jurisdictional claim in a petition for a writ of habeas corpus when that claim could have been presented at trial and on appeal but was not.

4

federal law when later unexplained state court orders uphold that judgment). The United States

Court of Appeals for the Fourth Circuit has "repeatedly recognized that the procedural default rule

set forth in Slayton constitutes an adequate and independent state law ground for decision." Fisher

v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (internal quotations omitted). Ford does not

challenge that Slayton applies to claims 7, 9, and 14, and therefore, I find that he has procedurally

defaulted these claims pursuant the independent and adequate state procedural rule of Slayton.

A court may not review procedurally defaulted claim unless the petitioner demonstrates

either (1) cause for default and actual prejudice, or (2) a fundamental "miscarriage of justice" due

to petitioner's actual innocence. Wolfe v. Johnson, 565 F.3d 140, 160 (4th Cir. 2009). Ford asks

that his procedural default under Slayton be excused due to the holding of Martinez v. Ryan, ___

U.S. ___, 132 S. Ct. 1309 (2012), which excuses the procedural default of "substantial" claims of

ineffective assistance of trial counsel where cause was either that no counsel was provided or

ineffective assistance of counsel was provided during the initial state collateral proceeding.

However, claims 7, 9, and 14 are not claims of ineffective assistance of counsel, and thus,

Martinez does not apply.[8] Accordingly, Ford fails to show cause and prejudice or establish his

---

[8] Ford mentions in a passing remark in his response to the motion to dismiss that he would like to amend claims 7, 9, and 14 into ineffective assistance of counsel claims, which have never been presented to the Supreme Court of Virginia. I find that the request was not properly filed for the court's consideration. See Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); see also Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992) (noting a pro se litigant must follow the same rules of procedure that govern other litigants); Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984) (per curiam) (noting pro se litigants are not excused from having to comply with substantive and procedural law and that a court is not permitted to act as counsel for either party). Even if the request was properly filed, the request is futile for presenting unexhausted claims that could have been presented to the Supreme Court of Virginia. Ford presents no argument in favor of finding cause and prejudice to excuse the failure to exhaust or that the claims are substantial other than his bare conclusion that these new, unexhausted issues should be excused from default because he did receive assistance of counsel to prepare the state habeas petition. Such a bare conclusion is not sufficient to state a claim for relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (recognizing factual allegations must describe a right to relief above the speculative level and cannot rely on labels and conclusions). Although a court liberally construes pro se petitions, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), a court does not act as a pro se litigant's advocate, sua sponte developing claims not clearly incorporated in the petition.

5

actual innocence, to overcome the procedural defaults of claims 7, 9, and 14, and I recommend that these claims be dismissed.

**IV.**

After a state court addresses the merits of a claim also raised in a federal habeas petition, a federal court may not grant the petition unless the state court's adjudication of a claim is contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413.

A federal court may also issue the writ under the "unreasonable application" clause if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. This reasonableness standard is an objective one. Id. at 410. A Virginia court's findings cannot be deemed unreasonable merely because it does not cite established United States

---

See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se petitioner).

Supreme Court precedent on an issue if the result reached is not contrary to that established precedent.  Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'"  Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)).  Finally, "[a] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Wood v. Allen, 558 U.S. 290, 301 (2010).

## A.

In claim 2, Ford argues that the evidence was insufficient to prove that he committed aggravated sexual battery and object sexual penetration, in violation of Virginia Code § 18.2-67.3 and § 18.2-67.2, respectively.[9]  A state court conviction will not be disturbed if the federal habeas court determines that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" after viewing the evidence in the light most favorable to the prosecution.[10]  Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (original emphasis).  I have reviewed the trial record, which the Court of Appeals of Virginia aptly summarized as follows:

---

[9] The Court of Appeals of Virginia held that the evidence was sufficient to convict Ford of these crimes after viewing the evidence in the light most favorable to the Commonwealth.  See Ylst, 501 U.S. at 803 (holding that a federal court can rely on a reasoned state court judgment resting primarily on federal law when later unexplained state court orders uphold that judgment); Jones v. Murray, 947 F.2d 1106, 1110 (4th Cir. 1991) (stating written findings of historical fact by the state court are presumed to be correct and entitled to deference unless shown to be erroneous).

[10] The due process clause of the Fourteenth Amendment protects a state court defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  Virginia Code § 18.2-67.3(A)(1) made it unlawful to "sexually abuse[] the complaining witness, [who] . . . is less than 13 years of age."  Sexual abuse meant "an act committed with the intent to sexually molest, arouse, or gratify any person, where[] [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts[.]"  VA. CODE § 18.2-67.10.  Virginia Code § 18.2-67.2 made it unlawful, in pertinent part, to "penetrate[] the labia majora . . . of a complaining witness . . . [who] is less than 13 years of age."

7

[Ford] was convicted of sexually abusing the daughter of his girlfriend in 1998 and 1999 when the victim was about seven years old. When the victim was seventeen years old, she was struggling with anger and conflict with her mother, and the victim and mother sought counseling in 2009 with Ken Farrar. During the course of the counseling, the victim told Farrar that when she was younger, [Ford] sexually abused her. . . . Farrar reported the allegation to authorities. . . . The victim testified she was unaware that Farrar was required to report the criminal behavior.

* * *

[T]he evidence proved that the victim's mother began dating [Ford] when the victim was six years old and [Ford] frequently babysat the victim. After a counseling session in May 2009 where the mother learned of the sexual abuse allegation, she called [Ford], and although he denied the allegation, the mother ended the relationship. The next day, [Ford] called the mother and admitted that he exposed himself to the victim and rubbed her bottom and legs, but he did not know what he was doing due to the use of drugs.

The victim testified the first incident occurred when she was about seven years old and she was in [Ford]'s trailer. While in his bedroom, [Ford] put on a pornographic video, rubbed her back, and put his finger inside her vagina. [Ford] told the victim he would kill her if she told anyone. The victim testified she believed [Ford]'s threat. The victim testified she told her best friend, Amber Graves, about the sexual abuse a few weeks after it began, but she told Graves not to tell anyone. The victim testified that [Ford] engaged in the same conduct during a winter school break while she was at the trailer. . . . The victim testified [Ford] reached inside her pants and touched her vagina, but she wiggled away and he was unable to penetrate her vagina. The victim testified when she was eight and nine years old, [Ford] rubbed her back and legs and penetrated her vagina with a finger while he watched a pornographic video at his trailer. The victim testified [Ford] told her that her mother would not believe her if she told her mother about the sexual abuse.

Officer Harrison, an officer with the Buena Vista Police Department, told [Ford] about the allegations. In a written statement, [Ford] admitted he showed the victim pornographic videos, he exposed himself to her, and he rubbed her legs and back while under the influence of drugs. [Ford] stated he might have rubbed under her pants, but he did not remember due to the drugs. [Ford] stated he did not remember what happened every time because he was under the influence of drugs. [Ford] stated the events with the victim made him realize that he had a problem with drugs and that helped him to stop using drugs. [Ford] stated he wanted to call the victim, but he just could not do it. [Ford] stated he knew God had forgiven him. [Ford] stated the victim had seen him naked and had seen him having sex with mother. Officer Harrison did not tape the session when [Ford] gave his statement. A notation in the statement provided that [Officer] Harrison wrote the statement because [Ford] asked him to do so. [Ford] signed the written statement. The written statement was admitted into evidence.

Investigator Miles Kelly with the Rockbridge County Sheriff's Office arrested [Ford] and [Ford] admitted he tickled the victim, but stated he did not intentionally show her

8

pornography and she walked in on him while he was watching pornography. [Ford] stated that during the phone call with [the victim's] mother in May 2009, he only admitted that he rubbed the victim's back. [Ford] denied that the handwriting on the statement to Officer Harrison was his. Investigator Kelly recorded his interview with [Ford], and that the recording and transcript of the interview were admitted into evidence.

Amber Graves testified that the victim told her about the sexual abuse when the victim was about seven years old, but she never told anyone because the victim told her not to do so.

Kitty Ford, [Ford]'s mother, testified [Ford] and [Ford]'s twin sister, Jamie, lived with her at the trailer. Kitty testified the victim did not begin coming to the trailer until the victim was approximately ten years old. Kitty testified that she usually went shopping with Jamie on Saturdays, and she left for work at approximately 8:00 a.m. Kitty confirmed [Ford]'s use of pornography at her trailer. Jamie testified she worked during the week and admitted [Ford] watched pornography. Jamie testified that [Ford] never babysat the victim.

[Ford] testified he was never alone in his bedroom with the victim and he never babysat her. [Ford] testified Officer Harrison "turned everything around" in the written statement and that he did not read it prior to signing it. [Ford] admitted he rubbed the victim's back, bottom and legs, but [the victim's] mother was always present and he only touched the victim in a "fatherly fashion." [Ford] testified the victim walked in on him while he was watching pornography and he told her to leave his room. [Ford] testified the only times the victim saw him naked were when she walked into the bathroom while he was taking a shower, and when she walked into the bedroom while he was having sex with mother. [Ford] admitted he was a convicted felon.

Ford v. Commonwealth, No. 1546-10-3, slip op. at 2, 4-6 (Va. Ct. App. Feb. 9, 2011); see Tr. 79-109, 179-225, 268-301, 330-57, 364-79, 395-410, 432-41, 473-76. After hearing evidence and argument, the jury found Ford guilty of three counts of aggravated sexual battery and two counts of object sexual penetration.

Ford does not present clear and convincing evidence that the jury resolved any factual issue incorrectly, and the jury gave more weight to the credibility of the Commonwealth's witnesses versus the credibility of the defense witnesses, including Ford. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (stating federal habeas review does not redetermine the credibility of witnesses). After reviewing the trial transcript and evidence in the light most favorable to the

Commonwealth, I find that <u>any</u> rational trier of fact could have found beyond a reasonable doubt that Ford committed three counts of aggravated sexual battery and two counts of object sexual penetration.  The victim testified about the instances Ford touched the outside and inside of her vagina while she was less than thirteen years old between October 1, 1998, and March 31, 1999, and between December 1 and 31, 1999, as alleged in the indictments.  Accordingly, I recommend that claim 2 be dismissed.

**B.**

In the remaining claims 4-6, 8, 10-13, and 15, Ford argues that trial and appellate counsel rendered ineffective assistance of counsel, in violation of the Sixth Amendment.  The Circuit Court of Rockbridge County considered and dismissed the claims as meritless, which the Supreme Court of Virginia refused to reconsider.  After reviewing the record, I recommend that the ineffective assistance of counsel claims be dismissed because the state court's adjudication of all these claims was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.

A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  The first prong of <u>Strickland</u> requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness.[11]  <u>Strickland</u>, 466 U.S. at 687-

_____

[11] <u>Strickland</u> established a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  <u>Strickland</u>, 466 U.S. at 689.  "Judicial scrutiny of counsel's performance must be highly deferential[,]" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time."  <u>Id.</u>  "[E]ffective representation is not synonymous with errorless representation."  <u>Springer v. Ford</u>, 586 F.2d 329, 332 (4th Cir. 1978).

88.  The second prong of Strickland requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."[12]  Id. at 694.

Ford asserts in claim 6 that counsel was ineffective by not obtaining transcripts of Ford's prior trial in Buena Vista to cross examine witnesses.  Relatedly, Ford asserts in claim 4 that trial counsel was ineffective by not preparing to cross examine Officer Harrison.  The state court's rejection of these claims was proper.  Ford claimed that Officer Harrison testified at the Buena Vista trial how he did not write Ford's statement verbatim.  However, Officer Harrison was cross-examined on this point during the Rockbridge trial, explaining that Ford's statements were written verbatim in the signed statement but not written verbatim in Officer Harrison's notes.  Officer Harrison did not recall previously testifying that the signed statement was not written verbatim unless he "was confused" by questions asking whether his notes or the signed statement reflected what Ford said verbatim.  Furthermore, Ford did not proffer which witnesses gave contradictory testimony during the Rockbridge trial or how transcripts of the Buena Vista trial would have revealed those contradictions.  See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (recognizing a petitioner must allege what an adequate investigation would have revealed).

In claim 5, Ford alleges that counsel was ineffective by not striking Rodney Watts, who allegedly worked with Ford "for several summers," from the venire.  However, Watts affirmed before being seated as a juror that he did not know Ford, did not know of the victim's allegations, did not have an interest or stake in the outcome of the case, and would decide the case based solely on the evidence and the law.  Furthermore, the trial record reflects that Ford did not tell counsel

---

[12] If a petitioner has not satisfied one prong of the Strickland test, a court does not need to inquire whether the petitioner has satisfied the other prong.  Id. at 697.

11

about Watt's alleged familiarity with Ford until "about the time" the jury left for to deliberate. Counsel made a post-trial motion for a mistrial because Watts was a juror, but the Circuit Court denied the motion as untimely because Ford clearly delayed disclosing this fact until the end of trial to manipulate a favorable outcome.

In claim 8, Ford argues that trial counsel was ineffective by not withdrawing as counsel and testifying when Cleveland Southers recanted his affidavit.  In claim 10, Ford argues that trial counsel was ineffective by not subpoenaing witnesses who would have presented the case "in a more favorable light."  The state court dismissed both these claims because Ford did not proffer what counsel and any unspecified witness would have said if they testified.  Furthermore, any testimony by counsel about what Southers told him before recanting the affidavit would have been inadmissible hearsay at a second trial.  Moreover, Ford fails to establish that the outcome of a second trial with Southers testifying would be different; defense counsel would call Southers to testify at a new trial as a hostile witness solely to impeach unfavorable testimony with the disavowed affidavit.

In claim 11, Ford argues that trial counsel was ineffective by not asking that the trial be continued to the next day because the trial did not end until almost midnight.  The state court found the claim lacked merit because a defendant has no right to make that decision.  Thus, the decision to ask for a continuance is left with counsel, and the discretion to grant such a request is left with the trial court.  Furthermore, the state court record reflects that the jury began deliberating at 8:21 p.m. and returned its verdicts around 10:00 p.m.  The trial judge asked the jurors if they wanted to complete the penalty phase that night or return the next morning.  After conferring in the jury room, the jurors elected to stay, and they made their sentencing recommendation at 10:55 p.m.

Clearly, the trial judge left the decision in the hands of the jurors, not counsel, and for counsel to ask the trial judge to disregard the jurors' decision and compel them to return the next day to recommend Ford's sentences is not a sound trial strategy.

In claim 12, Ford argues that trial counsel was ineffective by not obtaining Ford's work history to establish that Ford worked during the times of the crimes, and he similarly argues in claim 13 that trial counsel was ineffective by not obtaining and presenting a timeline of events to the jury. The state court rejected the claims as meritless because Ford did not proffer how the work records or timeline would have established his innocence. Many of the allegations dated back at least ten years, and the indictments alleged that the crimes occurred during date ranges, not on specific dates.

In claim 15, Ford argues that appellate counsel was ineffective by not obtaining all of trial counsel's files to prepare the appeal. The state court rejected the claim because Ford did not proffer what files appellate counsel did not have or describe what appellate claim could have been presented with the unspecified files. Appellate counsel presented two claims of court error and argued that the evidence was insufficient to sustain the convictions, and appellate counsel does not need to raise every non-frivolous issue requested by defendant. Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, it "is the hallmark of effective appellate advocacy" to select the strongest claims and focus on those on appeal. Burger v. Kemp, 483 U.S. 776, 784 (1987). Accordingly, Ford fails to establish deficient performance or resulting prejudice, and I recommend that all ineffective assistance of counsel claims be dismissed.

13

## V.

Based on the stated findings and for the stated reasons, I **RECOMMEND** that respondent's motion to dismiss should be granted.  The Clerk of the Court is **DIRECTED** to **TRANSMIT** the record in this case to the Honorable Glen E. Conrad, Chief United States District Judge.  Both sides are reminded that they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof, pursuant to Rule 72(b).  Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is further directed to send copies of this Report and Recommendation to Ford and counsel of record for respondent.

Enter:  September 11, 2014

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge

14